IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAQUN RASHEED WILLIAMS,  :  <br>     Plaintiff,                                   : <br>                                              : <br>     v.                                             :     CIVIL ACTION NO. 24-CV-0662 <br>                                              : <br> JOE TERRA, *et al.*,                   : <br>     Defendants.                     : | |

**MEMORANDUM**

**BAYLSON, J.**                                                                                                          APRIL 21, 2025

      Plaintiff Laqun Rasheed Williams, who is currently incarcerated at SCI Huntingdon, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights related to the conditions of his confinement at SCI Phoenix.  ("Compl." (ECF No. 1.))  In his Complaint, Williams asserts claims against the following SCI Phoenix employees:  Warden Joe Terra, Deputy Superintendent Fitzgerald-Young, Intensive Management Unit ("IMU") Manager S. Grady, "CCPM" J. Muick, "DSFM" N. Wynder, "DSCS" C. Hensley,[1] K. Owens, J. Bertolini, ("RHU"/IMU Lieutenant Spagnoletti, Hearing Examiner Yodis, Grievance Coordinator G. Orlando, Correctional Officer ("CO") Morgan Harris, and Lieutenant Spivey.  (*Id* at 2-4.)  The gravamen of his claim is that certain Defendants have retaliated against him by issuing misconducts after he filed grievances and lawsuits, which have affected his status on and lengthened his assignment to the Intensive Management Unit ("IMU") and, concomitantly, delayed his return to the general population.  He also alleges that he has been subjected him to unconstitutional conditions of confinement, without benefit of due

---

[1] Williams des not explain what these acronyms stand for.

process. He asserts First Amendment retaliation claims and associated Eighth and Fourteenth Amendment claims. (*See id*.) Currently before the Court is a Motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by all Defendants seeking partial dismissal of Williams's Complaint. (ECF No. 34.) Williams has filed a "Motion in Opposition" to the Defendants' Motion that the Court will deem to be a Response. (ECF No. 41.) For the following reasons, the Motion will be granted in part and denied in part.

I.   **FACTUAL ALLEGATIONS**[2]

Beginning in 2021, Williams was housed in the IMU at SCI Phoenix. (*Id*. at 4.) On April 26, 2023, Grady, Spagnoletti, and Fitzgerald-Young approached Williams and Spagnoletti told him to pack his belongings because he was being transferred from L-B-Pod to L-C-Pod, allegedly because he would not stop filing grievances.[3] (*Id*. at 6.) Fitzgerald-Young, who is not alleged to have spoken directly to Williams, told another inmate that Williams was being moved because he filed lawsuits and grievances. (*Id*. at 7.) Williams filed a grievance based on the new housing assignment, which he describes as retaliatory. (*Id*.) He asserts that certain unidentified Defendants refused to participate in the process, interfering with his ability to exhaust his claim. (*Id*. at 7-8.) Williams also filed a grievance after an allegedly retaliatory search of his cell, but again, unidentified Defendants refused to participate in the grievance process, interfering with his ability to exhaust his claim. (*Id*. at 8.)

---

[2] The factual allegations set forth in this Memorandum are taken from Williams's Complaint (ECF No. 1). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Williams's pleadings will be corrected for clarity. Williams's handwritten 36-page Complaint is supplemented by 15 Exhibits. The Court considers the entire filing to constitute the Complaint.

[3] Williams alleges that L-C-Pod is for inmates who "bang [items] and scream all night and throw urine and feces at each other." (*Id*. at 4.) Inmates on L-C-Pod are isolated from each other. (*Id*.) Inmates on L-B-Pod can interact with each other. (*Id*. at 5.)

On June 3, 2023, following a Program Review Committee ("PRC") Hearing, Williams progressed from Phase 3 to Phase 2 of the IMU process based on his positive behavior.[4] (*Id*. at 9.) Two days later, he was escorted to a hearing room by Defendant Grady for a hearing regarding Misconduct B814672, issued on May 31, 2023. (*Id*.) Williams told Grady he was previously unaware of the misconduct, and further told him that he, Williams, knew that Grady used another inmate to set him up. (*Id*.) Grady dismissed the misconduct. (*Id*.)

On July 14, 2023, Spagnoletti and Grady prepared false documents requiring that Williams be restrained whenever he left his cell, in retaliation for Williams's filing of lawsuits and grievances. (*Id*. at 9-10.) Williams had previously been approved by the PRC to remain unrestrained while out of his cell, and he alleges there was no penological justification for the change in his status. (*Id*. at 10.) Williams sent a request slip to Grady asking the reason for the change, and spoke to Spagnoletti, who told Williams he had to stop filing grievances and lawsuits. (*Id*.) Williams filed a grievance regarding the restraints but was unable to exhaust his remedies because unidentified Defendants would not participate in the process. (*Id*.)

On August 20, 2023, Defendant Harris informed Williams that he would be receiving a misconduct because of a lawsuit he filed against Harris. (*Id*. at 11.) Later that day, Williams received a misconduct for threatening an employee, refusing a direct order, and using abusive language. (*Id*.) Defendant Yodis dismissed the misconduct because it was not properly served on Williams. Harris rewrote the misconduct and a hearing was held, during which non-Defendant CO Simmonds testified that Williams never threatened Harris, refused a direct order,

---

[4] Williams alleges that the IMU program is comprised of six phases, and inmates pass through the phases sequentially. (Compl. at 4.) Inmates are required to spend a minimum period of time in each phase but can be assigned to any particular phase for more than the minimum required time. (*Id*.) His allegations suggest that there is no obligation to advance an inmate to a new phase of the program. (*See* Compl.)

or used abusive language. (*Id*.) He also testified that he had heard Harris state that because of the filing of the lawsuit against him, he planned to restrict Williams's visits and phone calls and extend his time in the IMU Program. (*Id*.) Yodis dismissed the misconduct following the hearing. (*Id*.)

On September 12, 2023, while Williams was cleaning, he noticed an inmate harming himself in his cell. (*Id*. at 13.) He entered the inmate's cell to prevent an apparent suicide attempt. (*Id*.) Though he succeeded in preventing the inmate's suicide at that time, the inmate, later that night, successfully cut himself, requiring hospitalization and stitches. (*Id*. at 14.) The next day, at his PRC meeting with Grady, Muick, Mynder, Hensley, and Spagnoletti, those Defendants recommended a Phase 2 modification based on an assault misconduct issued the day before based on Williams's interaction with the other inmate. (*Id*. at 15.) Williams informed these Defendants that he did not assault the inmate, but, rather, prevented a suicide attempt. (*Id*. at 16.) On September 14, 2023, Grady and Spagnoletti put the proposed modification in place, requiring Williams to wear restraints outside of his cell, and confiscated his electronics. (*Id*.) Following a hearing on the misconduct, Yodis found Williams guilty of fighting. (*Id*. at 16-17.)

In support of Harris, on November 8, 2023, Defendants Terra, Muick, Wynder, Hensley, Grady, and Spagnoletti refused to see Williams at a previously schedule PRC meeting and changed Williams from Phase 2 to Phase 3 based on the August 20, 2023 misconduct issued by Harris that had been dismissed following a hearing. (*Id*. at 12.) Williams alleges that Grady, Spagnoletti, Terra, Wynder, Muick, and Hensley were aware that once they regressed Williams to Phase 3 he would be required to spend the entire minimum required time in Phase 3, thereby extending his stay in the IMU program for another 18 to 30 months. (*Id*.)

Throughout the remainder of his Complaint, Williams alleges that he was denied due process by Defendants Terra, Muick, Wynder, Hensley, Grady, and Spagnoletti, who did not provide him with the required regular PRC hearings in an effort to prevent Williams from challenging his regression to Phase 3 and the related loss of privileges, and that because of his regression to Phase 3 based on the allegedly false misconducts, he was restrained when he left his cell, and was denied privileges such as visits and access to the commissary.  (*See* Compl.) He attributes his lengthy stay on Phase 3 to the false misconduct issued to him by Harris in retaliation for Williams filing a lawsuit against Harris, and to the misconduct pursuant to which he was found guilty of fighting, when in fact, he was attempting to prevent another inmate from committing suicide.[5]  He claims that Terra, Muick, Wynder, Hensley, Grady, and Spagnoletti have retaliated against him, in violation of his First Amendment rights, that he has been subjected to cruel and unusual punishment in violation of his Eighth Amendment rights, and has been denied due process in violation of his Fourteenth Amendment rights.  (*Id*. at 33-34.)  He requests declaratory and injunctive relief and money damages.  (*Id*. at 35-36.)

## II.     STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

---

[5] The Court notes that the factual basis for the latter grievance is the subject of sharp dispute between the parties.  Defendants attach a Declaration addressing the factual basis of the misconduct to their Motion, and Williams attaches numerous Affidavits from other inmates to his Response, providing his version of the events.

5

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) (abrogation on other grounds recognized by *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal

6

involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.    DISCUSSION

Defendants seek dismissal of the following claims:  all claims against Defendants Owens, Orlando, Yodis, Fitzgerald-Young, Bertolini, and Spivey (Mot. at 7-8); claims for declaratory and injunctive relief (Mot. at 8-9); Eighth Amendment claims against Grady, Spagnoletti, Muick, Hensley, Wynder, and Terra (Mot. at 10-11); and Fourteenth Amendment due process claims against Grady, Spagnoletti, Muick, Hensley, Wynder, and Terra (Mot. at 12-15).  Defendants do not seek dismissal of Williams's First Amendment retaliation claim against Grady, Spagnoletti, Muick, Hensley, Wynder, Terra, and Harris, and these claims will proceed to discovery.  (*See* form of Order included with Motion, ECF No. 34 at 1.)  Attached to Defendants' Motion are the following Exhibits: Declaration of Sean Grady pertaining to the factual basis for the issuance of the misconduct giving rise to Williams's regression to Phase 3 of the IMU program "with restraints in place whenever his is outside of his cell" (ECF No. 34-1); Declaration of Daniel Coulehan pertaining to Williams's cell assignment at SCI Greene (ECF No. 34-2); and Williams's housing assignment history (ECF No. 34-3).

Williams filed a Response to Defendants' Motion.  (ECF No. 41.)  Williams concedes that his Complaint does not state plausible claims against certain Defendants, but otherwise argues against dismissal of any claims asserted in the Complaint.  (*See* Resp.)  Williams attaches 30 exhibits to his Response, including Affidavits, Declarations, correspondence, Program Review Committee Reports, and an appeal from a misconduct.  (*Id*. at 14-47.)

7

A.     **Claims Against Individual Defendants**

Defendants seek dismissal of claims against Owens, Orlando, Yodis, Fitzgerald-Young, Bertolini, and Spivey, asserting that Williams does not adequately allege that they were personally involved in the conduct giving rise to Williams's claims. (Mot. at 7-8.) In his Response to the Motion, Williams concedes that Yodis and Bertolini were not involved in the events described in the Complaint and agrees to the dismissal of claims against them. (Resp. at 6.)

Defendants assert that the allegations against Owens and Orlando are limited to their participation in the grievance process. (Mot. at 7.) Williams responds that they should remain as Defendants because they did not properly follow the grievance procedures set forth in DC-ADM 804, governing the processing of inmate grievances. (Resp. at 6.) However, he does not describe any involvement they had in the events giving rise to his claims except their participation in the grievance process. The claims against Owens and Orlando must, accordingly, be dismissed, because claims based on the handling of prison grievances fail since "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Williams predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances."

8

(internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Defendants assert that Defendant Spivey should be dismissed since there are no factual allegations in the Complaint describing any conduct in which he engaged. (Mot. at 7.) Williams counters that his claims against Spivey should not be dismissed because she allegedly delivered to Williams a slip advising him that his visiting privileges had been terminated as a result of the misconduct filed against him. (Resp. at 7.) He continues that he requires discovery from her regarding the slip and related adverse actions. (*Id.*) He does not, however, dispute that there are no factual allegations in the Complaint upon which to base a plausible claim against Spivey. Williams's claims against Spivey will be dismissed because the law is clear that in the absence of allegations of personal involvement, a plaintiff has failed to state a claim. *See Rode*, 845 F.2d at 1207. If at some later date Williams is able to allege facts to support a claim against Spivey, he may move for leave to amend his Complaint to add those claims.

Defendants also claim that the allegations describing Fitzgerald-Young's conduct are too "threadbare" to support a claim. (Mot at 7-8.) In the Complaint, Williams alleges that Fitzgerald-Young approached him on L-B Pod with Defendants Grady and Spagnoletti, but that she remained at the bottom of the steps talking to another inmate. (Compl. at 6.) He also alleges that Fitzgerald-Young informed that inmate that he, Williams, was being moved to a different unit because he had filed lawsuits and grievances. (*Id.* at 7.) He does not allege in his Complaint that she was involved in the decision to change his cell assignment. In his Response, Williams argues that his claims against Fitzgerald-Young must not be dismissed, because her comments to

9

the other inmate reflect that, as a supervisor, she was aware of and acquiesced to the retaliatory change in cell assignment to which Williams was subjected. (Resp. at 7.) Liberally construing these allegations in the light most favorable to Williams, these allegations are adequate to state a claim against Fitzgerald-Young.

In sum, Williams's claims against Yodis, Bertolini, Owens, Orlando, and Spivey will be dismissed for failure to state a claim. His claims against Fitzgerald-Young will proceed to discovery.

### B. Claims for Declaratory and Injunctive Relief

In his Complaint, Williams seeks declaratory and injunctive relief. (Compl. at 34-35.) Specifically, he seeks a declaration that the Defendants violated his rights in their use of restraints, and their continuation of his restriction to the IMU without benefit of regular PRC reviews, and that his regression to Phase 3 in the IMU was based on false misconducts issued in retaliation for his filing of grievances and lawsuits. (*Id*. at 34.) Additionally, Williams seeks an injunction requiring the Defendants to release him to the general prison population and restore all of his rights and privileges, and further requiring them to expunge a disciplinary misconduct from his record in light of the fact that it was dismissed. (*Id*. at 35.) Defendants move to dismiss Williams's requests for declaratory and injunctive relief. (Mot. at 8-9.) This aspect of Defendants' Motion will be granted.

#### 1. Declaratory Relief

Declaratory relief is unavailable to adjudicate past conduct, so Williams's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin.*

*Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Defendant's Motion on this issue will be granted and Williams's request for declaratory relief will be dismissed.

### 2. Injunctive Relief

Defendants seeks dismissal of Williams's claim for injunctive relief because it is barred by immunity and mootness. (Mot. at 8-9.) They argue the claim is moot on the basis of a Declaration submitted by Daniel Coulehan, a Unit Manager at SCI Greene. (ECF No. 34-2.) Coulehan asserts that upon his transfer from SCI Phoenix to SCI Greene, Williams was moved from the IMU to the Management Control Unit ("MCU") which Coulehan describes as less restrictive than the IMU, in that inmates on the MCU "receive out-of-cell hours similar to inmates in general population, they have access to general population commissary, and they are not placed in restraints." (*Id*. at 2-3.) Coulehan refers to Williams's cell history, which is attached to the Declaration. (*See* ECF No. (34-4.) The cell history reflects that on June 25, 2024, Williams was transferred to SCI Greene and assigned to the MCU.[6] (*Id*. at 3.)

Williams responds that his request for injunctive relief is not moot, because the false misconduct that resulted in his placement in the IMU remains in his record and could affect

---

[6] The Court notes that on March 30, 2025, Williams advised the Court that he had been transferred to SCI Huntingdon. (ECF No. 44.) The Court is not aware of Williams's current cell assignment.

11

future decisions regarding his placement in the general population, including further regression and further delay in his return to the general population. (Resp. at 8-10.) Williams's request for injunctive relief will be dismissed as moot because the named Defendants, who are all SCI Phoenix employees, are not in a position to provide the requested relief to Williams, who is no longer incarcerated at SCI Phoenix. *See Griffin v. Beard*, 401 F. App'x. 715, 716-17 (3d Cir. 2010) (*per curiam*) (holding that transfer from SCI Huntingdon rendered inmate's injunctive relief claim moot where there also is no indication that he was reasonably likely to be transferred back); *McClain v. Pennsylvania Dep't of Corr.*, No. 19-1951, 2022 WL 1122944, at *1 (M.D. Pa. Mar. 21, 2022), *report and recommendation adopted*, 2022 WL 1109445 (M.D. Pa. Apr. 13, 2022) ("We find that the plaintiff's transfer from SCI Camp Hill renders moot his current motion for injunctive relief from the defendants, corrections officials at this facility who formerly oversaw the conditions of the plaintiff's imprisonment at that particular facility.").

      **C.**      **Dismissal of Eighth and Fourteenth Amendment Claims, Qualified Immunity**

Defendants seek dismissal of Williams's Eighth Amendment conditions of confinement claims and his Fourteenth Amendment due process claims. (Mot. at 9-11, 12-15.) They also argue that qualified immunity bars Williams's Eighth Amendment claims. (Mot. at 11-2.) Even at this early stage, factual disputes have come to light regarding the basis of the misconduct that gave rise to Williams's regression to Phase 3 in the IMU program, the related deprivations and the reasons for his lengthy stay in that position. As the case will proceed to discovery on Williams's First Amendment retaliation claims, it is more appropriate to permit the remaining claims to proceed as well. Accordingly, the remainder of Defendants' Motion will be denied without prejudice to reassertion in a motion for summary judgment following the close of discovery when the issues can be decided on a more fully developed record.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion insofar as it seeks dismissal of claims against Owens, Bertolini, Yodis, Orlando, and Spivey and denial of Williams's requests for declaratory and injunctive relief.  The remainder of the Motion will be denied.

An appropriate Order follows.

BY THE COURT:

/s/ Michael M. Baylson
_____
**MICHAEL M. BAYLSON, J.**