**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LA-QUN RASHEED WILLIAMS**<br>*Plaintiff*,<br>**v.**<br><br>**JOE TERRA, et al.,**<br>*Defendants*. | **CIVIL ACTION NO. 24-0662** |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BAYLSON, J.** **August 20, 2026**

## I. INTRODUCTION

Plaintiff La-Qun Rasheed Williams ("Plaintiff") filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights related to the conditions of his confinement at State Correctional Institution (SCI) Phoenix. ("Compl.," ECF 1). After the disposition of Defendants' 12(b)(6) motion, the remaining Defendants are the following SCI Phoenix employees (collectively, "Defendants"): Joseph Terra, Makeba Fitzgerald-Young, Sean Grady, John Muick, Nathan Wynder, Charles Hensley, Anthony Spagnoletti, and Morgan Harris. The Complaint alleges a First Amendment retaliation claim, a Fourteenth Amendment procedural due process claim, and an Eighth Amendment claim.[1] The gravamen of Plaintiff's Complaint is that Defendants violated his constitutional rights by delaying his progression in the Intensive Management Unit ("IMU") program by issuing him misconducts in retaliation for his filing of grievances and lawsuits. Compl.

Presently before the Court is Defendants' Motion for Summary Judgment ("Mot.," ECF 67), Plaintiff's Response in Opposition ("Opp.," ECF 89), and Defendants' Reply ("Rep.," ECF

[1] Although the Complaint includes a "preliminary statement" in which Plaintiff states that the Complaint also alleges conspiracy and equal protection claims, such claims are not mentioned in the body of the Complaint and therefore will not be addressed by the Court. Compl. at 1.

93). For the following reasons, the Court will **DISMISS** Plaintiff's First Amendment retaliation claim without prejudice for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). The Court will **GRANT** Defendants' Motion for Summary Judgment on the Fourteenth Amendment procedural due process and Eighth Amendment claims.

## II. FACTUAL BACKGROUND

During the time period relevant to the Complaint, Plaintiff was an inmate at SCI Phoenix. Defendants' Statement of Undisputed Facts ("DSUF," ECF 68) ¶ 1; Plaintiff's Opposition to Defendants' Statement of Undisputed Facts ("PSUF," ECF 89) ¶ 1. On August, 6, 2021, Plaintiff was placed in the Intensive Management Unit (IMU). Id. The goal of the IMU is to "house and provide socialization opportunities for individuals confined to a Security Level 5 (SL5) setting" through a phased progression program. SCI Phoenix IMU Inmate Handbook, Mot. Ex. 2 at 2. At each phase, of which there are six, the inmate is provided "additional privileges and incentives." Id. at 3. Phase 6 of the IMU imposes the most restrictions, while Phase 1 is the least restrictive phase. DSUF ¶ 3, PSUF ¶ 3.

On April 26, 2023, Plaintiff was moved by Defendants Grady, Spagnoletti, and Fitzgerald-Young to L-C Pod and was told this was done because "he would not stop filing grievances and Lawsuits." DSUF ¶ 7; PSUF ¶ 7. On May 31, 2023, Plaintiff was cited for misconduct No. B814672. DSUF ¶ 10; PSUF ¶ 10. On June 7, the Periodic Review Committee (PRC) progressed Plaintiff from Phase 3 to Phase 2 in the IMU program. DSUF ¶ 8, PSUF ¶ 8. A hearing on misconduct No. B814672 occurred on June 9, 2023, but the misconduct was ultimately dismissed. DSUF ¶¶ 9–10, PSUF ¶¶ 9–10. On June 13, Plaintiff filed grievance No. 1038527 in which he alleged he was being retaliated against by Defendant Grady for exercising his First Amendment

right to file "grievances and lawsuits against the IMU program." Grievance No. 1038527, Mot. Ex. 5 at 1. In Grievance No. 1038527, Plaintiff claims the retaliation took the form of a conspiracy between Grady and a nonparty inmate named Yassin Mohamad to "set up" the Plaintiff. Id.; Opp. at 1. On July 10, 2023, Defendant Muick dismissed Grievance No. 1038527. Grievance No. 1038527 at 3. Plaintiff then appealed to the facility manager. Id. at 4. On August 1, Defendant Terra denied Plaintiff's appeal. Id. Plaintiff alleges that he filed his "final grievance appeal" on August 4, 2023. Opp. at 3. The office responsible for review and disposition of all final appeals is the Secretary's Office of Inmate Grievances and Appeals (SOIGA). Mot. at 4. Chief of SOIGA, Keri Moore, claims never to have received Plaintiff's final appeal regarding Grievance No. 1038527. Declaration of Keri Moore, Mot. Ex. 4. ¶ 14.

In late July 2023, Defendants Spagnoletti and Grady created a document that required Plaintiff to be put in restraints. DSUF ¶ 11, PSUF ¶ 11. In August 2023, Defendant Harris told Plaintiff that he would receive a misconduct for a previous lawsuit Plaintiff filed in which Defendant Harris was also a named defendant. DSUF ¶¶ 12–13, PSUF ¶¶ 12–13. On August 30, Defendant Harris cited Plaintiff with misconduct No. D941613 for allegedly threatening Harris. DSUF ¶ 14; PSUF ¶ 14. Misconduct No. D941613 was dismissed due to a technical defect in service of the misconduct charge. DSUF ¶ 1; PSUF ¶ 15. The misconduct charge was rewritten and then subsequently dismissed again. DSUF ¶¶ 16–17, PSUF ¶¶ 16–17.

On September 12, 2023, nonparty officers cited Plaintiff for misconduct No. D780116 due to an alleged altercation with another inmate, which Plaintiff denies. Misconduct D780116, Mot. Ex. 9 at 5; DSUF ¶¶ 18–20, PSUF ¶¶ 18–20. Plaintiff contends that he was trying to save the other inmate from harming himself. DSUF ¶ 19, PSUF ¶ 19. On September 16, Plaintiff filed Grievance No. 1052643 on the grounds his due process rights were violated for improper service of process

regarding Misconduct No. D780116. Grievance No. 1052643, Mot. Ex. 6 at 2. On September 19, a nonparty officer rejected Grievance No. 1052643. Id. at 1. On September 25, Plaintiff refiled an amended version of Grievance No. 1052643. Id. at 16. On October 16, Misconduct No. D780116 was dismissed without prejudice by Defendant Terra. DSUF ¶ 23, PSUF ¶ 23. On October 31, a misconduct charge for the actions of September 12th were rewritten as misconduct No. D785893, but this charge was also dismissed without prejudice. Id. ¶ 24; Mot. Ex. 10. On November 1, Plaintiff withdrew Grievance No. 1052643. Mot. Ex. 6 at 20.

On November 8, 2023, the PRC decided to regress Plaintiff from Phase 2 to Phase 3 in the IMU program. DC-141 Form, Mot. Ex. 11. The regression went into effect November 18th. Opp. at 14. Williams was not present at the PRC hearing when the committee made the decision to regress Williams from Phase 2 back to Phase 3. DSUF ¶ 27, PSUF ¶ 27. Plaintiff was moved from the IMU on June 25, 2024. DSUF ¶ 30, PSUF ¶ 30.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue

at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 578 U.S. 632, 635 (2016) (citing 42 U.S.C. § 1997e(a)). Inmates who fail to complete the prison grievance process in a timely manner have not properly exhausted their claims and are barred from litigating those claims in federal court. See, e.g., Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). Failure to exhaust available administrative remedies under the PLRA is an affirmative defense that must be pled and proven by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). "Completion of the administrative review process means 'substantial' compliance with the prison's grievance

procedures." DeFranco v. Miller, No. CV 20-368, 2023 WL 3876779, at *6 (W.D. Pa. Mar. 23, 2023), report and recommendation adopted, No. CV 20-368, 2023 WL 3170400 (W.D. Pa. May 1, 2023) (quoting Spruill, 372 F.3d at 231).

### 1. First Amendment Retaliation Claim

Pennsylvania's Department of Corrections ("DOC") has issued administrative directives identified by the acronym "DC-ADM." DC-ADM 804 sets out the policy and procedures pertaining to the Inmate Grievance System.[2] The DOC's Inmate Grievance System "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." DC-ADM 804 § 1(A)(2). The DC-ADM 804 grievance process provides three stages of adjudication. Initially, the inmate may submit their grievance to the "Facility Grievance Coordinator" or their designee. DC-ADM 804 § 1(A)(5). Next, the inmate may appeal the response or rejection received by the initial reviewer to the "Facility Manager." Id. § 2(A)(1)(a). Finally, if the inmate remains dissatisfied, they may submit a final grievance appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). Id. § 2(B)(1)(b). DC-ADM 804 requires that "[e]very appeal to Final Review must be addressed to the following: Chief, Secretary's Office of Inmate Grievances and Appeals[,] Department of Corrections[,] 1920 Technology Parkway[,] Mechanicsburg, PA 17050." ADM 804 § 2(B)(1)(i).

For example, in DeFranco, a prisoner was deemed to have properly exhausted his administrative remedies because he properly filed a grievance and followed the first two stages of review and then mailed his final grievance appeal to the "Office of Inmate Grievance and Appeals" but did not receive a response. 2023 WL 3876779, at *1–*3. In that case, it was noted by the

[2] DOC policies are publicly available on the DOC's website, at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited August 19, 2026).

Assistant Chief Grievance Officer at SOIGA that "[i]nmates are required to mail their final appeals to SOIGA, at Technology Parkway, Mechanicsburg, Pennsylvania . . . [as] several different DOC offices occupy that building and utilize the same street address." Id. at *4. The court held that even though the inmate's final grievance appeal was addressed to the "Office of Inmate Grievance and Appeals" rather than the "Secretary's Office of Inmate Grievances and Appeals" as required by DC-ADM 804, the inmate to be considered "in compliance with DC-ADM 804," and had exhausted his administrative remedies. Id. at *6. Omission of the word "Secretary's" did not render the inmate out of substantial compliance with DC-ADM 804.

Here, unlike in DeFranco, Plaintiff did not substantially comply with the applicable procedures and so failed to exhaust his administrative remedies for his First Amendment retaliation claim. Defendants argue that Plaintiff never exhausted his remedies for Grievance No. 1038527, wherein he grieves the alleged First Amendment retaliation, because he did not complete the third and final stage of the DC-ADM 804 grievance process. Mot. at 9. Although Plaintiff claims to have submitted a final grievance appeal for grievance No. 1038527, he never mentions SOIGA by name. Opp. at 3. According to Plaintiff, he mailed his final grievance appeal to "Final Grievance Appeal" located at "1920 Technology Parkway, Mechanicsburg, PA 17050." Id. Exs. 11–12, 14. While the street address matches that required by the policy, he addressed the mailing to "Final Grievance Appeal" rather than "Chief, Secretary's Office of Inmate Grievances and Appeals," as required by the policy. ADM 804 § 2(B)(1)(i). Exhaustion requires "'substantial' compliance with the prison's grievance procedures." DeFranco, 2023 WL 3876779, at *6. Plaintiff addressing the letter to "Final Grievance Appeal" when the policy plainly requires that "[e]very appeal to Final Review must be addressed to . . . Chief, Secretary's Office of Inmate Grievances and

Appeals" does not satisfy substantial compliance with the procedures of DC-ADM 804. ADM 804 § 2(B)(1)(i).

Although the Court may sit as a finder of fact to resolve factual disputes relating to exhaustion under the PLRA, this issue warrants no such factual determinations as there is no dispute over any material facts. Small v. Camden Cnty., 728 F.3d 265, 269 (3d Cir. 2013). Seeing as it is an undisputed fact that Plaintiff did not properly submit his final grievance appeal to SOIGA, and so as a matter of law did not comply with DC-ADM 804 as required by the PLRA, the Court will **DISMISS** Plaintiff's First Amendment retaliation claim without prejudice.

**2. Procedural Due Process and Eighth Amendment Claims**

As noted above, DC-ADM 804 sets out the policy and procedures pertaining to the Inmate Grievance System and "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." DC-ADM 804 § 1(A)(2). However, "[i]ssues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, 'Inmate Discipline' and/or DC-ADM 802 'Administrative Custody Procedures.'" Id. § 1(A)(7).

Plaintiff claims violation of both his procedural due process rights under the Fourteenth Amendment and his right to be protected from cruel and unusual punishment pursuant to the Eighth Amendment. Opp. at 8, 12. Defendants rely on Plaintiff's withdrawal of his DC-ADM 804 Grievance No. 1052643, wherein Plaintiff grieves a violation of his right to procedural due process, to plead their exhaustion defense for these claims. Mot. at 6. However, as was noted in a recently decided case—involving the same Plaintiff, one of the same defendants, and similar issues—a

grievance filed pursuant to DC-ADM 804 "is ultimately irrelevant to exhaustion" of Plaintiff's procedural due process and Eighth Amendment claims because DC-ADM 804 is not the relevant policy by which Plaintiff was required to follow to exhaust these claims. See Williams v. Stickney, No. CV 22-214, 2025 WL 2200911, at *10 (E.D. Pa. July 31, 2025) (Pappert, J.), appeal docketed, No. 25-2618 (3d Cir. Aug. 22, 2025).

Plaintiff's procedural due process claim concerns his regression from Phase 2 to Phase 3 in the IMU program. Opp. at 14. Similarly, Plaintiff's Eighth Amendment claim concerns the harms he suffered due to said regression. Opp. at 11. Since both claims relate to "a specific disciplinary sanction" and the duration of Plaintiff's stay in the IMU program, DC-ADM 804 is not applicable here. DC-ADM 804 § 1(A)(7). Because Defendants "offer evidence concerning only the use of grievance procedures under ADM 804," here as in Stickney, "the Court is unable to conclude that Williams failed to exhaust his procedural due process [and Eighth Amendment] claim[s]." See 2025 WL 2200911, at *10. As established above, it is Defendants' burden to plead and prove the affirmative defense of failure to exhaust. See Ray, 285 F.3d at 295. Due to the dearth of evidence relating to Plaintiff's failure to exhaust under DC-ADM 801 and/or 802, the Court will assume Plaintiff's claims are not barred by the PLRA's exhaustion requirement. Thus, the court will proceed to evaluating both the procedural due process and the Eighth Amendment claims on their merits.

**B. Procedural Due Process Claim**

The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due

process of law." Burns v. PA Dep't of Correction, 544 F.3d 279, 285 (3d Cir. 2008). An incarcerated individual has a liberty interest in freedom from restraints that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

When deciding whether an action rises to the level of "atypical and significant," courts must weigh both "the amount of time the prisoner was placed into disciplinary segregation" and "whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates." Id. at 144. The two inquires provide factors then weighed on a sliding scale where the "typicality of the duration varies with the conditions of confinement." Wayne v. Wetzel, No. CV 21-4209, 2024 WL 3696467, at *8 (E.D. Pa. Aug. 7, 2024) (Savage, J.), aff'd, No. 24-2816, 2026 WL 594906 (3d Cir. Mar. 3, 2026). That is, the "more restrictive the conditions, the shorter the time spent under them will be atypical" and vice versa. Id.

Here, Plaintiff claims his right to procedural due process was violated when the PRC—at a hearing held on November 8, 2023, without Plaintiff present—regressed him from Phase 2 to Phase 3 of the IMU program, effective November 18, 2023.[3] Opp. at 14; Mot. at 12. In response, Defendants argue that IMU phase demotion does "not amount to atypical or significant hardship required to support a due process claim." Rep. at 7. Seeing as Plaintiff's IMU phase regression occurred on November 18, 2023, and Plaintiff brought this action against Defendants on February

---

[3] It is unclear whether Plaintiff asserts additional procedural due process claims on the grounds that on April 26, 2023, he was "given a phase modification," "put back in restraints," and had his status changed from administrative confinement to disciplinary confinement without a PRC hearing. Opp. at 13; Compl. ¶ 78. However, Plaintiff seemingly clarifies this confusion in his Opposition: "Clearly the Plaintiff is arguing the basis for his Fourteenth Amendment claim is that he was entitled to his due process with respect to the opportunity to be heard so that he could contest to the false allegation of the regression for the two misconducts that was dismissed." Opp. at 15. The "regression for the two misconducts that was dismissed" could only be referring to the November 18th regression from Phase 2 to Phase 3 of the IMU program. Hence, the Court will not address this separate potential Fourteenth Amendment claim regarding the events of April 26th.

12, 2024, the period complained of was approximately three months in duration. Opp. at 14; Compl. at 1. Therefore, the initial question is if the three months Plaintiff spent in IMU Phase 3, instead of in Phase 2, constitutes a violation of a protected liberty interest. The Court finds that it does not.

Pennsylvania courts have not deemed IMU phase regression as violative of a protected liberty interest. Laurensau v. Zaken, No. 2:25 CV 263, 2026 WL 403618, at *12 (W.D. Pa. Jan. 9, 2026), report and recommendation adopted, No. 2:25-CV-263, 2026 WL 400720 (W.D. Pa. Feb. 12, 2026) (holding that "[t]o the extent Plaintiff challenges his IMU phase and program length, Plaintiff does not have a constitutional right to any particular housing assignment"); Rosa-Diaz v. Oberlander, No. 1:22-CV-239, 2023 WL 6795805, at *4 (W.D. Pa. Oct. 13, 2023) (citing Wilkinson v. Austin, 545 U.S. 209, 221, (2005) (finding that an inmate that was reassigned to the IMU program did "not have a constitutional right to any particular security classification or the right to a particular housing unit or facility.").

First, we turn to the issue of the amount of time spent in confinement. In both cases mentioned above, plaintiffs were facing lengthier stays than Plaintiff in this case: in Laurensau, the plaintiff was facing demotion from Phase 3 to Phase 5 of the IMU program, 2026 WL 403618 at *4, while in Rosa-Diaz the plaintiff was placed in Phase 6 of the IMU program. 2023 WL 6795805 at *3. Given that the "IMU program involves thirty days at phase 6, nine months at phase 5, nine months at phase 4, [and] nine months at phase 3," Plaintiff's three months at Phase 3 in this case constitutes a shorter length of confinement than either of the two cases above. Id.; see also Mot. Ex. 2 at 3–4. Therefore, the duration factor in the "atypical and significant" calculus weighs against finding a protected liberty interest here.

Next, we examine whether the "conditions of [Plaintiff's] confinement" in IMU Phase 3 were "significantly more restrictive than those imposed upon other inmates." Shoats, 213 F.3d at 144. Because Plaintiff complains only of his demotion from Phase 2 to Phase 3, the Court must determine the difference in conditions of confinement between the two phases. Although Plaintiff concludes that he "had to undergo atypical and significant hardship in relation to ordinary incidents of prison life," he provides no factual evidence to support his legal conclusion. Opp. at 14. As Defendants point out, Plaintiff himself admitted in his sworn deposition testimony that there a there are no differences in "privileges or activity restrictions" between Phases 2 and 3 of the IMU program."[4] Mot. at 15, Ex. 1 at 10:20–25. Accordingly, the Court has no reason to find that Plaintiff's conditions of confinement in IMU Phase 3 rather than Phase 2 were more restrictive than those imposed upon other prisoners.

In conclusion, weighing both the duration and conditions of Plaintiff's confinement in IMU Phase 3 as opposed to Phase 2, the Court finds that the prison's action was not "atypical and significant." Since Plaintiff does not have a protected liberty interest regarding "his placement at any phase of the IMU program," there is no need to proceed to the second inquiry regarding whether Plaintiff's absence from his own regression hearing denied him procedural due process of law. Laurensau, 2026 WL 403618 at *12. Viewing the undisputed factual evidence in the light most favorable to Plaintiff, the Court does not recognize that there was, as a matter of law, a violation of Plaintiff's constitutional rights. Hence, the Court will **GRANT** the Motion as to the procedural due process claim.

[4] In Plaintiff's Opposition, Plaintiff argues that there is a "slight difference" in the phases. PSUF ¶ 5.

**C. Eighth Amendment Claim**

The Eighth Amendment states, in relevant part, that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. In order to challenge conditions of confinement on Eighth Amendment grounds, a prisoner must show the punishment received was, objectively, "sufficiently serious" and that it stemmed, subjectively, from "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834, (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 302–303 (1991). The first (objective) element is satisfied "when the allegations depict conditions where the inmate is denied 'the minimal civilized measure of life's necessities.'" Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2022) (quoting Wilson, 501 U.S. at 299). The second (subjective) element is satisfied when "an inmate shows officials knew of, but disregarded, that the prison conditions posed 'an excessive risk to inmate health and safety.'" Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

Plaintiff provides a long list of grievances to support his Eighth Amendment claim. Opp. at 9–12. The Court construes most of the harms described as immaterial factual background rather than constituting the substance of the claim itself. The Court adopts this interpretation for two reasons. First, the events described take place well before February 12, 2022, which would be the earliest date a § 1983 claim could be litigated in Pennsylvania for a claim filed on February 12, 2024. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)) ("The statute of limitations for a § 1983 claim arising in Pennsylvania is two years"). Second, nearly all the alleged harms mentioned do not appear in the original Complaint. See Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) (internal quotations omitted) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Hence, we address the sole remaining claim mentioned in the original complaint and

not barred by the statute of limitations: the harms suffered due to Plaintiff's regression from IMU Phase 2 to Phase 3. Opp. at 11; Compl. ¶¶ 145, 147.

Here, Plaintiff provides no evidence to support a finding that he was denied "the minimal civilized measure of life's necessities." See Clark, 55 F.4th at 179. Plaintiff claims a violation of the Eighth Amendment due to his "Phase Modification" and his being put "in restraints." Opp. at 11. However, it has been consistently held by the courts that "[p]lacement in an IMU alone does not violate the Eighth Amendment." Johnson v. Henry, No. 2:23-CV-1686, 2024 WL 4336293, at *5 (W.D. Pa. Sept. 27, 2024); see also Batchelor v. Little, No. CV 22-1340, 2022 WL 16749039, at *9 (E.D. Pa. Nov. 7, 2022) (Kearney, J.) (finding that there was "no evidence the conditions of [the plaintiff's] confinement meets the objective prong of the Eighth Amendment test" when the plaintiff was in IMU Phase 4); Rosario v. Wetzel, No. 2:23-CV-966, 2025 WL 755516, at *5 (W.D. Pa. Mar. 10, 2025), aff'd, No. 25-1612, 2025 WL 2452464 (3d Cir. Aug. 26, 2025) (holding that an inmate placed in IMU Phase 3 was not "denied basic necessities" and so did not satisfy the objective component of an Eighth Amendment claim); Wayne, 2024 WL 3696467, at *6 (concluding the limitations placed on inmates in the IMU "were not cruel and unusual"). Thus, the objective prong of the Eighth Amendment test is not satisfied here.

Moving to the subjective prong, Plaintiff fails to supply evidence that Defendants knew about, and disregarded, "an excessive risk to inmate health and safety." See Clark, 55 F.4th at 179. Although Plaintiff claims Defendants unjustly regressed him to IMU Phase 3 for misconduct charges that were dismissed, this does not indicate that doing so exposed Plaintiff to any risks pertaining to his health and safety, nor that Defendants know of such risks. Opp. at 11.

In conclusion, on the basis of the undisputed facts, Plaintiff has failed to establish that Defendants inflicted upon him cruel and unusual punishment. Accordingly, the Court will **GRANT** Defendant's Motion as it relates to the Eighth Amendment Claim.

### D. Qualified Immunity

Defendants contend that they are protected from suit via qualified immunity. Mot. at 17. We will not decide whether Defendants are entitled to such qualified immunity due to the preceding determinations that no unconstitutional actions have taken place.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion will be **GRANTED** as to the procedural due process and Eighth Amendment claims. Plaintiff's First Amendment retaliation claim is **DISMISSED** without prejudice for failure to exhaust administrative remedies as required by the PLRA. An appropriate **ORDER** follows.

\\adu.dcn\paed\phl-data\judge_baylson\civil 24\24-662 williams v terra\24-662 memo re def. msj.docx